# United States Court of Appeals for the Federal Circuit

03-5127

FLORIDA POWER & LIGHT COMPANY, CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., EMPRESA NACIONAL DEL URANIO, S.A., IES UTILITIES, INC., NIAGARA MOHAWK POWER CORPORATION, PENNSYLVANIA POWER AND LIGHT COMPANY, WISCONSIN ELECTRIC POWER COMPANY, DUKE ENERGY CORPORATION, acting through its Duke Power Division, and VIRGINIA ELECTRIC AND POWER COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

## Judgment

ON APPEAL from the United States Court of Federal Claims

In CASE NO(S). 96-CV-644

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED: VACATED AND REMANDED

ENTERED BY ORDER OF THE COURT

DATED JUN 15 2004

Jan Horbaly, Clerk

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

03-5127

FLORIDA POWER & LIGHT COMPANY, CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., EMPRESA NACIONAL DEL URANIO, S.A., IES UTILITIES, INC., NIAGARA MOHAWK POWER CORPORATION, PENNSYLVANIA POWER AND LIGHT COMPANY, WISCONSIN ELECTRIC POWER COMPANY, DUKE ENERGY CORPORATION, acting through its Duke Power Division, and VIRGINIA ELECTRIC AND POWER COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: June 15, 2004

---

Before MICHEL, BRYSON, and LINN, Circuit Judges.

LINN, Circuit Judge.

Florida Power & Light Company; Consolidated Edison Company of New York, Inc.; Empresa Nacional Del Uranio, S.A.; IES Utilities, Inc.; Niagara Mohawk Power Corporation; Pennsylvania Power and Light Company; Wisconsin Electric Power Company; Duke Energy Corporation; and Virginia Electric and Power Company (collectively "appellants" or "utilities") appeal from a decision of the United States Court of Federal Claims entering judgment in favor the United States. Fla. Power & Light Co.

v. United States, No. 96-644C, 56 Fed. Cl. 555 (May 28, 2003) ("Florida Power V"). Because we conclude that the trial court's analysis was incomplete, we vacate and remand for further proceedings consistent with this opinion.

BACKGROUND

With this appeal, this case has now been before this court on three separate occasions. Because the parties are familiar with the background of this case, and because the facts underlying this case have been recited in previous opinions of this court and the trial court, we will repeat only those facts as are relevant here. See, e.g., Fla. Power & Light Co. v. United States, 307 F.3d 1364, 1366-68 (Fed. Cir. 2002) ("Florida Power IV"); Fla. Power & Light Co. v. United States, 198 F.3d 1358, 1359-60 (Fed. Cir. 1999) ("Florida Power II").

In short, each of the utilities was party to a contract with the United States, wherein the utilities agreed to purchase a fixed percentage of their uranium needs from the government. Before July 1, 1993, the contracts were administered and performed through the Department of Energy ("DOE"), and the price that the DOE could charge was constrained by statute, see 42 U.S.C. § 2201(v) (1988), which specified that "any prices established under this subsection shall be on a basis of recovery of the Government's costs over a reasonable period of time."

The Energy Policy Act of 1992 ("EPAct") made significant changes in the government's uranium enrichment services program. Most notably, EPAct established the United States Enrichment Corporation ("USEC") to undertake the uranium enrichment services previously performed by DOE. All existing uranium enrichment contracts, including those of appellants, were transferred to USEC for administration,

effective July 1, 1993. EPAct also created the Uranium Enrichment Decontamination and Decommissioning Fund ("D&D Fund"), established to pay, among other things, "[t]he costs of all decontamination and decommissioning activities of [DOE] . . . until such time as the Secretary certifies and the Congress concurs, by law, that such activities are complete." 42 U.S.C. § 2297g-2(b) (2000). The D&D Fund is funded in part by a special assessment, collected annually, from domestic utilities that purchased enrichment services from DOE between 1945 and October 23, 1992.

The relevant time period in this appeal is the transition period between the enactment of EPAct on October 24, 1992, and the date on which USEC assumed responsibility for the contracts in question, July 1, 1993. The utilities initially complained to the appropriate contracting officer that the DOE's pricing during the transition period was erroneously high. After the contracting officer denied the utilities' complaint, the utilities filed suit in the Court of Federal Claims, alleging that the DOE improperly included decontamination and decommissioning costs in calculating its contract prices during the transition period, because DOE separately recovered those costs through the special assessment beginning fiscal year 1993.

The Court of Federal Claims granted a motion for judgment on the pleadings filed by the government, dismissing the utilities' action as being barred by res judicata and stare decisis. Fla. Power & Light Co. v. United States, 41 Fed. Cl. 477 (1998) ("Florida Power I"). This court reversed and remanded. Florida Power II, 198 F.3d 1358. On remand, and following discovery, the utilities asserted that the price set by DOE was based on recovering costs that included approximately $1.5 billion in improper costs, categorized in two components: (1) "remedial action costs," i.e., costs

for cleaning up contamination from the DOE enrichment facilities; and (2) the costs of disposing of depleted uranium tails. The utilities asserted that these costs were improperly included because they were to be otherwise paid from the D&D fund. Later, the utilities advanced another set of arguments, asserting that two additional, improper cost components had likewise been included in the costs: (1) $773 million in imputed interest on the Gas Centrifuge Enrichment Project, and (2) $394 million in costs related to the production of high-assay uranium for governmental applications. After trial, the Court of Federal Claims held that the government had improperly included the remedial action and depleted uranium tail costs in the calculation. Fla. Power & Light Co. v. United States, 49 Fed. Cl. 656, 662-665 (2001) ("Florida Power III"). Because the stipulated price per unit, after removing these costs, was $103 as compared to the $125 per unit that DOE charged, judgment was entered in favor of the utilities and damages were awarded in the amount of over $25 million. The court denied the utilities' other claims of improperly included costs on the ground that the utilities had presented these claims too late and that the government was prejudiced by the delay. Id. at 665-668. Finally, the court also held that the contracts were not governed by the Contract Dispute Act, and therefore, the utilities were not entitled to recover interest from the date the claims were submitted. Id. at 668-672 The government appealed the damages awarded for breach of contract; the utilities cross-appealed the decision that their other claims were barred as being untimely raised and the denial of interest from the date the claims were submitted.

In that appeal, the government advanced two arguments against the damages awarded by the Court of Federal Claims, namely that: (1) the DOE was not limited to a

cost-recovery basis for pricing its services during the transition period, and (2) the price for the government's services would have been the same even if the costs disallowed by the trial court had been omitted. This court dispensed with the government's first argument as without merit. As to the second, we found that the trial court had not ruled on whether DOE had sufficient appropriate costs to justify a price at or near the ceiling price, and so we could not reach the conclusion that the price would have been the same without the disallowed costs. Florida Power IV, 307 F.3d at 1368-69. As one facet of that calculus, we noted that the trial court "did not directly address the issue of what a reasonable time would be in the context of the transition period and the termination of DOE's responsibility for administering the enrichment contracts as of July 1993." Id. at 1369. We also concluded that, within the context of determining appropriate costs on remand, the utilities could also raise the issues that had been barred as untimely raised. Finally, we affirmed the trial court's determination that the CDA was inapplicable, barring interest. We thus remanded the case for determination of whether the government incurred sufficient appropriate costs to justify the price charged.

On remand, the trial court concluded that as of June 30, 1993, after all costs challenged by the utilities were removed, the DOE had incurred a $70 million cumulative loss. For this reason, the trial court concluded that the government was entitled to charge the ceiling price, and entered judgment in favor of the government.

The utilities timely appealed to this court, alleging numerous errors in the trial court's decision. This court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(3).

ANALYSIS

The mandate of this court in Florida Power IV stated:

> The utilities assert that there is no need for a remand because the trial court has already rejected the government's factual submission that there were other appropriate government costs that would have allowed the government to keep the price at or near the ceiling price. We disagree. The trial court did not make any findings as to the government's factual argument that there were other appropriate costs that would justify the price charged during the transition period. We therefore remand for the trial court to determine whether the total amount of the appropriate government costs that could properly be considered in setting the price for Fiscal Year 1993 would justify the price of $125 per [unit], and if a lower price would have been required, how much lower that price would have been.

307 F.3d at 1369. In that mandate, we also noted explicitly that, as part of the calculus in determining whether the price of $125 per unit was justified, the trial court would need to make a finding as to the reasonable period of time over which the government's costs were to be recovered. Id.

On appeal, appellants make three distinct arguments: (1) that the trial court failed to satisfy the mandate of this court in Florida Power IV; (2) that judgment in favor of the government is erroneous because EPAct established the sole method of recovery of all losses suffered by DOE; and (3) that the trial court's decision includes clearly erroneous factual findings. We consider each in turn.

A. Failure to follow mandate

The utilities argue that the trial court failed to satisfy the mandate of this court because it: (a) failed to determine whether the government's claimed cumulative loss consisted of "appropriate" costs; (b) failed to reopen the record; and (c) failed to determine the "reasonable period of time" over which the loss was to be recovered. The first argument is unavailing. After our remand in Florida Power IV, the government

moved for judgment on the record, arguing that, even after excluding all of the costs challenged by the utilities, it had still incurred sufficient cumulative losses to justify charging a price at or near the ceiling price. Florida Power V, 56 Fed. Cl. at 558-59. The trial court accepted this argument, and simply removed each of the costs challenged by the utilities. Because the trial court subtracted each of the costs challenged by the utilities as inappropriate, there was no need to further review the government's costs for appropriateness. Any allegations that other components of the government's costs were inappropriate should have been challenged at the earlier stages of this protracted litigation. Appellants cannot now seek to make arguments that should have been made before the litigation reached this late stage.

Appellants second argument, regarding the reopening of the record, is also unavailing. On remand, we stated that "[w]hether additional trial proceedings should be conducted to permit further development" of cost issues "is a matter for the trial court to decide in the exercise of its discretion." Florida Power IV, 307 F.3d at 1370. We find no abuse of discretion in the trial court's conclusion that "[t]he record developed at the 2001 trial is amenable to rendering findings on the subject of the remand." Florida Power V, 56 Fed. Cl. at 560.

However, we find persuasive the utilities' third argument, that the trial court failed to follow our mandate by not conclusively determining the reasonable time period over which the government's cumulative losses should be amortized. Our opinion in Florida Power IV specifically noted that the reasonable period of time over which costs were to be recovered would need to be decided on remand. 307 F.3d at 1369. The trial court made note of the issue in its opinion, as well as the fact that DOE had used both a 10-

year and a 12-year period over the course of the contracts. Florida Power V, 56 Fed. Cl. 557-58 n.4. Beyond that, however, the trial court neglected this issue, and neither determined what the reasonable time period for amortization should be nor calculated whether the government's losses, if amortized over this period, were sufficient to permit the government to charge a price at or near the ceiling price during the transition. The findings made by the trial court without a determination of a reasonable period of time did not comport with our mandate and were, for that reason, erroneous.

The government argues that it "need not pretend it could recover its costs after" the transition period ended, Appellee's Br. at 26, and thus contends that its costs should be fully amortized over the nine-month transition period. This argument is not persuasive. For many years, the government had used first ten, and then twelve, years as a reasonable period of time over which it was to recover its costs. By 1986, the government had begun using a computation tool, known as "FREE" or Financial Reports of the Enrichment Enterprise, to determine whether the price it charged would recover its costs over a reasonable period of time as required by the statute. Based on a set of assumptions about future costs, sales, and prices, the FREE program would show the time period required to recover costs. Using the FREE program, and running various scenarios based on a range of assumptions, the results demonstrated that the government would recover its costs over the calculated reasonable period of time. Originally, the government interpreted the statutory recovery mandate that costs be recovered over a "reasonable time period" to mean ten years; however, in 1990, the government was forced to adjust the cost-recovery period from ten to twelve years to enable the government's recovery of costs without exceeding the contractual ceiling

*price based on its FREE model.* The twelve-year recovery period in effect prior to EPAct was thus chosen by the government based on sound reasoning and empirical evidence.

There is nothing about the enactment of EPAct to require or suggest a change in the amortization term. The enactment of EPAct, by the government, should not result in a windfall to DOE or work to the detriment of the utilities. The EPAct also clearly contemplated that the government's full costs would not be recovered within the nine-month transition period, as EPAct also included provisions for recovering previously unrecovered costs through the proceeds of the sale of stock issued by USEC. 42 U.S.C. § 2297c-3(d) (1994), repealed by Pub. L. No. 104-134, 110 Stat. 1321-349 (1996). For these reasons, the government's argument for a nine-month reasonable period of time is unpersuasive. Barring any adjustment warranted on the record considered by the trial court on remand, it may be that the court will conclude, for example, that the reasonable time for the amortization of costs should remain precisely what it was prior to the enactment of EPAct, or twelve years. Because the trial court did not make a determination of the reasonable period of time over which costs should be recovered, we conclude that the trial court failed to follow our mandate. Accordingly, we vacate the trial court's judgment in favor of the government and remand for a determination of the reasonable period of time and further proceedings consistent with the remainder of this opinion.

B. EPAct as sole method of recovery

The utilities also argue that Congress, in enacting EPAct, contemplated the EPAct statutory scheme as the government's only method for recovering any

cumulative losses of the DOE's uranium enrichment activity, and that any cumulative loss incurred by the government prior to the transition period was not to be included in the per unit price calculation but was to be recovered by the proceeds of the sale of stock issued by USEC and by dividends.

As the government notes, this is an issue that the trial court had decided at an earlier stage of the trial. Although the utilities did file a cross-appeal from the Court of Federal Claims' original judgment, this issue was not raised in that cross-appeal. In Florida Power V, the trial court concluded that the utilities were precluded from raising it again, because it was within the scope of the previous appeal and the utilities had failed to raise it on appeal. The trial court therefore concluded that the issue was waived. 56 Fed. Cl. at 563 (citing Tronzo v. Biomet, 236 F.3d 1342 (Fed. Cir. 2001)). We find no error in the trial court's ruling on this issue and affirm the court's waiver determination.

C. Clearly erroneous fact findings

Finally, the utilities challenge many of the trial court's factual findings as clearly erroneous. The argument is centered around alleged mathematical errors including the asserted failure to subtract costs that the trial court insisted it subtracted. In light of our vacation of the trial court's denial of damages for failure to amortize the costs over a reasonable period of time, as discussed above, we need not and do not examine the details of the trial court's computations and leave it to the trial court in its recalculation of damages on remand to correct whatever mathematical errors it may have made in its last computation.

Before the trial court on this case's last iteration, both the trial court and the parties expressed confusion over exactly what it was that this court had mandated. To

be clear, the trial court, on remand, must: (1) look at the calculations regarding price per unit that would have occurred but for the enactment of EPAct; (2) remove the costs challenged by the utilities--namely remedial action costs, the costs of disposing of depleted uranium tails, imputed interest on the Gas Centrifuge Enrichment Project, and costs related to high-assay uranium--to the extent those costs were relied upon by the government to justify the per unit price charged; and (3) amortize the net costs calculated in steps (1) and (2) over the reasonable period of time to be determined by the trial court. While we leave the conduct of proceedings on remand to the sound discretion of the trial court, we believe that all relevant issues and arguments have been fully presented and considered and that the time has now come to bring this case to conclusion without more.

If the amortized costs are sufficient to support the government's charging of the contractual ceiling price during the transition period, the trial court should find in favor of the government. Otherwise, the trial court should find for the utilities and award damages based on the per unit price justified by the amortized costs. In this appeal, the utilities also request a mandate to the trial court of a determination of entitlement to interest should an award of damages be made. Because the question of interest was not decided by the trial court, the issue is not ripe for our consideration. Accordingly, we make no decision on the utilities' entitlement to any award of interest and leave that issue for consideration by the trial court, on remand, as may be appropriate.

CONCLUSION

Because the trial court failed to determine the "reasonable period of time" over which the government's appropriate costs should be recovered, we vacate the trial

court's judgment in favor of the government and remand the case to the Court of Federal Claims for proceedings consistent with this opinion.